

FILED

OCT 2 5 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
_____
DEPUTY CLERK

Marina L Weahunt
PO Box 1741
Beverly Hills  CA  90213

## UNITED STATES DISTRICT COURT
### ESTERN DISTRICT OF CALIFORNIA

**Marina L Weahunt**

Plaintiff,

vs.

**MortgageIT**, Inc

Defendant

Case # 2:10-cv-02122-MCE-KJM

**RESPONSE TO DEFENDANTS
MOTION TO DISMISS**

Date:  October 21, 2010

(1) The Plaintiff, in her Original Petition, plead that Defendant charged false fees as stipulated to Plaintiff as listed on the HUD 1 Settlement Statement, included as Exhibit 1. Plaintiff specifically plead that Defendant, at the time of settlement of the contract, Defendant failed to provide documentation to establish that said fees were not included in those fees expressly addressed by the Real Estate Settlement Procedures Act as forbidden to be charged to Plaintiff at settlement.

(2) Plaintiff stipulated each fee charged with particularity. Plaintiff calculated the precise amount that Plaintiff would have overpaid the note had Plaintiff paid off the note as stipulated by the Truth in Lending Statement provided by Defendant (see Exhibit 2). Plaintiff specifically alleged that said fees were fraudulent. Plaintiff alleged that Defendant failed to provide full disclosure by failing to provide documentation to prove that the above fees were authorized by law, that the services alleged provided were necessary, that the amount charged for each service was necessary, and that Defendant did not take an undisclosed markup on said fees.

(3) Plaintiff further alleged that Defendant, acting in concert and collusion with the loan broker, toward the perpetration of a carefully contrived connivance, provided the amounts listed in the HUD 1 Settlement Statement, to the loan broker as an undisclosed yield spread premium. Said undisclosed yield spread premium is alleged to be in addition to the one percent loan origination fee, charged to Plaintiff, as allowed by law. Plaintiff alleged that said payment to the broker of undisclosed yield spread premium was a predicate act intended to improperly influence loan broker to misrepresent facts to Plaintiff, to give partial disclosure of those facts which would appear favorable to the intent of the loan broker, while failing to give full disclosure of other facts that would not seem favorable to the contract.

(4) By the above, Plaintiff stated a claim for which recovery could be had, and therefore, Defendant's motion to dismiss is frivolous. Plaintiff moves the court to deny Defendant's pleading, or, in the alternative, treat Defendant's pleading as a request for more definite statement, in which case, Plaintiff will provide a more definite statement as requested.

(5) Further, Plaintiff moves the court to order sanctions against Defendant for filing a frivolous pleading and for failing to speak with candor to the court as Defendant is totally inept or acted with deliberate intent to improperly influence the court with false pleadings.

## STATUTE OF LIMITATIONS/ EQUITABLE TOLLING

(6) Plaintiff acted with due diligence by dealing only with licensed professionals. Plaintiff, by so doing had cause to trust in the proactive statements of Defendants concerning the true value of the property, the condition of the real estate market, and the propriety of the fees charged to Plaintiff at closing. Defendants acted with deliberate malice toward Plaintiff in that Defendants by making proactive statements to Plaintiff that revealed certain facts which would give a reasonable person of ordinary prudence cause to believe the current loan was properly priced and that said loan was the only loan Plaintiff qualified for while withholding facts which would have given Plaintiff full disclosure. Defendants actively concealed the complete truth from Plaintiff with the intent of defrauding Plaintiff.

    a. The Eleventh Circuit stated that "in deciding whether the statute should be tolled, it must be determined whether a 'reasonably diligent plaintiff' would have discovered the fraud." Id. ( *Sterlin v. Biomune Systems, 154 F.3d 1191, 1201 (10th Cir. 1998)).*

(7) Plaintiff, once put on notice of the pervasive fraud affecting the real estate industry, acted immediately with due diligence and engaged professionals to examine into the propriety of the practices engaged in by Defendants.

    *a.* The First Circuit, based on the same rationale as the Seventh Circuit, has stated that while "'storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner, . . . his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud."

*Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987).

(8) Defendants acted in concert an collusion, one with the other, in an organized scheme wherein, from the beginning, one predicate act after another was committed against Plaintiff in order to establish trust, then use that trust to perpetrate fraud against Plaintiff by systematically making false claims to Plaintiff in order to induce Plaintiff into entering into an express contract that was based on fraud. Plaintiff acted in good faith in all things and with due diligence by only dealing with licensed professionals. In as much as all actors were professionals, duly licensed by the state and federal governments and all governed by the relevant consumer protection laws, Plaintiff had cause to expect good faith and fair dealings from said licensed professionals.

   a. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989); [*15] Rest.2d Contracts § 205.* A mortgage broker has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773. Further, In Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917.*

   b. "A person who provides brokerage services to a borrower in a covered loan transaction by soliciting lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this fiduciary duty [is owed] to the consumer regardless of whom else the broker may be acting as an agent for . . . The fiduciary duty of the broker is to deal with the consumer in good faith. If the broker knew or should have known that the Borrower will or has a likelihood of defaulting ... they have a fiduciary duty to the borrower not to place them in that loan." *(California Department of Real Estate, Section 8: Fiduciary Responsibility, www.dre.ca.gov).*

(9) Plaintiff had no notice of wrong doing until the improprieties of the real estate market were finally made public in the popular media.

**a.** Other courts have indicated the one-year limitations period commences when the plaintiff is placed on inquiry notice, unless the plaintiff can show the actual exercise of reasonable diligence to discover the fraud. If the plaintiff can show the exercise of such diligence, the limitations period begins to run when the plaintiff actually discovers the facts underlying the alleged fraud. If, however, the plaintiff cannot show such actual diligence, constructive knowledge of the fraud is imputed to the plaintiff as of the date of inquiry notice. For example, in *Dodds v. Cigna Securities, Inc., 12 F.3d 346 (2d Cir. 1993)*, the Second Circuit stated that "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry." *Id. at 350*. The Dodds court further stated that the doctrine of "equitable tolling will stay the running of the statute of limitations only so long as the plaintiff has exercised reasonable care and diligence in seeking to learn the facts which would disclose [**35] fraud." Id. (internal quotations omitted). *Sterlin v. Biomune Sys., 154 F.3d 1191, 1201*.

(10)     When Plaintiff became aware of potential fraud by the licensed professionals Plaintiff had been induced to trust, Plaintiff made due diligent inquiry and discovered the fraud complained of herein.

  *a.* Plaintiff exercised due diligence and the time limitations in the Truth in Lending Act should be tolled so that the intent of the Legislature may be realized. The Seventh Circuit, essentially merging the inquiry notice and reasonable diligence standards into one governing standard, has indicated that a plaintiff is not put on inquiry notice until the plaintiff reasonably should have discovered the fraud. *See* Marks v. CDW Computer Ctrs., Inc., 122 F.3d 363, 368 (7th Cir. 1997) ("Inquiry notice does not begin to run unless and until the investor is able, with the exercise of reasonable diligence (whether or not actually exercised), to ascertain the information needed to file suit."); *see also* Law v. Medco Research, Inc., 113 F.3d 781, 785 (7th Cir. 1997) ("The plaintiff gets a year after he learned or should have learned the facts that he must know to know that he has a

claim."). An earlier Seventh Circuit case, however, rejected the plaintiff's argument that "in spite of reasonable diligence, it could not discover the facts underlying the defendants' fraud" and held that the one-year limitations period began to run once the plaintiff was placed on inquiry notice of the possibility of fraud. Whirlpool Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 610 & n.3 (7th Cir. 1995). Sterlin v. Biomune Sys., 154 F.3d 1191, 1201.

(11)     In the alternative, the acts as alleged against Defendants amount to criminal fraud in that, in a scheme to deceive and mislead Plaintiff, Defendants, by sham and trickery, induced Plaintiff into entering into a predatory loan contract wherein Plaintiff was charged amounts not allowed by law. Defendants, in perpetrating the above referenced predicate acts toward their carefully crafted criminal conspiracy, relied on the trust engendered by the laws intended to protect Plaintiff and others similarly situated from just the sort of abuse visited on Plaintiff. Plaintiff alleges a scheme of fraud and, therefore, upon proof at trial, Plaintiff has a right to seek common law equitable recoupment.

### A. TENDER BY SETOFF

(12)     Plaintiff has alleged a conspiracy on the part of all defendants which gives Plaintiff a claim against all defendants equally as coconspirators, Plaintiff has an equitable right to claim tender by setoff against the claims herein made against defendants.

### PLAINTIFF MADE CLAIMS WITH SPECIFICITY AND PARTICULARITY

(13) Plaintiffs alleged that the original lender overpaid the loan originator, with fees improperly charged to Plaintiff at closing in order to induce the

originator of the loan to breach his fiduciary duty to Plaintiff. By doing this, they committed common law fraud by making false statements to Plaintiff in order to convince Plaintiff that Plaintiff only qualified for a more expensive loan product than Plaintiff actually qualified for.  Plaintiff is prepared to prove up said claims after discovery, at a trial on the merits.

(14) Plaintiff alleged that Defendant(s) made partial disclosure of alleged facts concerning the conditions of the loan which is the basis for the issuance of the security instrument and lien document at issue. Plaintiff is prepared to prove at trial, after complete discovery that Defendant(s) failed to give full disclosure of facts that, if disclosed would have caused Plaintiff to make a different decision than the one made.

(15) Plaintiff alleged that the trustee, at closing, executed a carefully contrived connivance intended to apply undue pressure on Plaintiff in an effort to effect lack of full disclosure to Plaintiff and induce Plaintiff to enter into a contract without said full disclosure.  Plaintiff is prepared to provide proof, at trial, sufficient to convince a jury.

(16) Plaintiff alleges that, at closing, false fees were charged to Plaintiff by lender.   Said allegations are reiterated below with specificity.   Plaintiff alleged that the original lender sold the security instrument immediately after closing, but failed to transfer the lien document to the purchaser of said security instrument. Plaintiff is prepared to prove, subsequent to discovery, that the lender, while still holding the security instrument, received consideration and, therefore, could not be harmed rendering the lien unenforceable.

(17) Plaintiff alleged, and is prepared to prove at trial, that the lender maintained possession of the lien document in order to be able to file an IRS

Form 1099a and write the entire amount of the original note off lender's capital gains tax and, thereby, receive consideration a second time.

(18) Plaintiff alleged, and is prepared to prove at trial that, the original security instrument, if said instrument still exists, may give the holder a claim against the signator, but have no claim against the property.

(19) Plaintiff alleged, and is prepared to prove at trial that, Mortgage Inc, and the attorneys claiming to represent same, have committed fraud by representing to the court that Mortgage Inc  is as real party in interest in the contract of sale and has standing to take said property from defendant when no such claim exists.

(20) Plaintiff has alleged, and is prepared to prove at trial, that the defendant(s), by claiming standing to express the provisions of the contract of sale and lien, claim to be real parties in interest and, therefore, under the Federal Trade Commission Holder Rule 16 CFR 433, are subject to any claim Plaintiff may have against the original lender.

### B. LENDER CHARGED FALSE FEES

(21) Lender charged fees to Plaintiff that were in violation of the limitations imposed by    the Real Estate Settlement Procedures Act as said fees were simply contrived and not paid to a third party vendor.

(22) Lender charged other fees that were a normal part of doing business and should have been included in the finance charge.

(23) Below is a listing of the fees charged at settlement; neither at settlement, nor at any other time did Lender or Trustee provide documentation to show that the fees herein listed were valid, necessary, reasonable, and proper to charge Petitioner.

| 808 | Flood Determination fee | $10.00 |
| 809 | Admin Fee | $745.00 |
| 810 | Tax Registration Fee | $69.00 |
| 811 | Wire Fee | $19.00 |
| 812 | Processing Fee | $695.00 |
| 813 | Administration Fee | $695.00 |
| 814 | Funding Fee | $695.00 |
| 815 | Broker Credit | $464.25 |
| 901 | Interest from 5-3-07 to 5-01-07 | $103.02 |
| 1101 | Settlement fee | $895.00 |
| 1106 | Notary Fees | $350.00 |
| 1108 | Title Insurance | $2,500.00 |
| 1111 | Wire/Express | $10.45 |
| 1112 | Messenger Fee | $100.00 |

(24) Debtor is unable to determine whether or not the above fees are valid in accordance with the restrictions provided by the various consumer protection laws. Therefore it was demanded to please provide;

   a. a complete billing from each vendor who provided the above listed services;

   b. the complete contact information for each vendor who provided a billed service;

   c. clearly stipulate as to the specific service performed;

   d. a showing that said service was necessary;

   e. a showing that the cost of said service is reasonable;

   f. a showing of why said service is not a regular cost of doing business that should rightly be included in the finance charge.

(25) The above charges have been disputed and deemed unreasonable until such time as said charges have been demonstrated to be reasonable, necessary, and in accordance with the limitations and restrictions included in any and all laws, rules, and regulations intended to protect the consumer.

(26) In the event lender fails to properly document the above charges, borrower will consider same as false charges. The effect of the above amounts that borrower would pay over the life of the note will be an overpayment of $565,076.79. This amount will be reduced by the amount of items above when said items are fully documented.

## *C. RESPA PENALTIES*

(27) From a cursory examination of the records, with the few available, the apparent RESPA violations are as follows:

a.  Good  Faith Estimate not within limits

b.  No HUD-1 Booklet

c.  Truth In Lending Statement not within limits compared to Note

d.  Truth in Lending Statement not timely presented

e.  HUD-1 not presented at least one day before closing

f.  No Holder Rule Notice in Note

g.  No 1st Payment Letter

    1.  No signed and dated :

    2.  Financial Privacy Act Disclosure;

    3.  Equal Credit Reporting Act Disclosure;

    4.  Notice of right to receive appraisal report;

    5.  Servicing disclosure statement;

    6.  Borrower's Certification of Authorization;

    7.  Notice of credit score;

    8.  RESPA servicing disclosure letter;

9. Loan discount fee disclosure;

10. Business insurance company arrangement disclosure;

11. Notice of right to rescind.

(28) The courts have held that the borrower does not have to show harm to claim a violation of the Real Estate Settlement Procedures Act, as the Act was intended to insure strict compliance. And, in as much as the courts are directed to assess a penalty of no less than two hundred dollars and no more than two thousand, considering the large number enumerated here, it is reasonable to consider that the court will assess the maximum amount for each violation.

(29) Since the courts have held that the penalty for a violation of RESPA accrues at consummation of the note, borrower has calculated that, the number of violations found in a cursory examination of the note, if deducted from the principal, would result in an overpayment on the part of the borrower, over the life of the note, of $672,750.20.

(30) If the violation penalty amounts for each of the unsupported fees listed above are included, the amount by which the borrower would be defrauded is $712,012.11

(31) Adding in RESPA penalties for all the unsupported settlement fees along with the TILA/Note variance, it appears that lender intended to defraud borrower in the amount of $2,747,956.45

## MORE DEFINITE STATEMENT

(32) Plaintiff is willing to prepare a more definite statement for the court. Subsequent to the filing of the original complaint, Plaintiff has made inquiry and found evidence of knowing and deliberate criminal acts by lenders intended to defraud Plaintiff of Plaintiff's property and is prepared to file a more definite statement with the court.

## ONGOING CRIMINAL CONSPIRACY

(33) Defendant complains that the document is similar to other documents alleging wrongdoing by banks and lending institutions. This begs a question; does the wrongdoing of Defendant(s) become somehow less wrong simply because they do it to everyone? Simply because the lenders are accused by numerous plaintiffs of acting in concert and collusion, one with the other, of the perpetration of predicate acts toward the furtherance of an ongoing criminal enterprise intended to strip the people of this country of the equity in their property, and thereby, deprive them of their homes, is hardly a valid objection. It seems Defendant(s), by complaining that others have accused them of the same sorts of fraud should somehow render the claims made here less valid. This also simply demonstrates the extent of their acts of theft and fraud. Plaintiff suggests, instead of attacking the messenger, the court may consider convening a court of inquiry to examine into the fraudulent practices of the Defendant(s) and encourage the federal government to pick up the mantel and prosecute the criminal wrongdoing of the banks and lending institutions.

## CONCLUSION

(34) Plaintiff maintains that Defendant(s) motion of dismissal is without merit, and that counsel, in making said claim, has failed to speak with candor with the court.

**Respectfully Submitted,**

**Marina L Weahunt**

*Exhibit 1*

/export/data/radardocs2/nuxeo/srcblobs/mit-184503-200905061414-110/8287772.tif - page 1

A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT

B. TYPE OF LOAN
1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.
4. ☐ VA  5. ☐ CONV. INS.
6. FILE NUMBER:
7. LOAN NUMBER:
8. MORTGAGE INS. CASE NO.:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME & ADDRESS OF BORROWER: Michel L. Welch

E. NAME & ADDRESS OF SELLER:

F. NAME & ADDRESS OF LENDER: MORTGAGEIT, INC.

G. PROPERTY LOCATION:

H. SETTLEMENT AGENT:
PLACE OF SETTLEMENT:

I. SETTLEMENT DATE:

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower: | | 400. Gross Amount Due To Seller: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 4,310.38 | 403. | |
| 104. Payoff To Anglo | 193,987.72 | 404. | |
| 105. Payoff To National City | 197,996.10 | 405. | |

FINAL HUD CERTIFIED COPY

Page 1 of 2

## L. SETTLEMENT CHARGES

| | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission Based On Price $ _____ @ _____ % = | | |
| Division of Commission (line 700) As Follows: | | |
| 701. $ _____ to | | |
| 702. $ _____ to | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| 800. Items Payable In Connection With Loan | | |
| 801. Loan Origination fee _____ % | | |
| 802. Loan Discount _____ % | | |
| 803. Appraisal fee to | | |
| 804. Credit report to | | |
| 805. Lender's inspection fee | | |
| 806. Mortgage Insurance application fee to | | |
| 807. Assumption fee | | |
| 808. Flood Determination To: MORTGAGEIT, INC. | 18.00 | |
| 809. ADMIN FEE To MORTGAGEIT, INC. | 345.00 | |
| 810. Tax Registration To: MORTGAGEIT, INC. | 69.00 | |
| 811. Wire Fee To: MORTGAGEIT, INC. | 19.00 | |
| 812. Processing Fee To: LBP CAPITAL | 895.00 | |
| 813. Administration Fee To: LBP CAPITAL | 695.00 | |
| 814. Funding Fee To: LBP CAPITAL | 695.00 | |
| 815. Broker Credit Paid MMCC To: LBP CAPITAL | (695.25) | |
| 816. Yield Spread Premium To: LBP POC. $18,168.00 | | |
| 900. Items Required By Lender To Be Paid In Advance | | |
| 901. Interest from 5/01/2007 to 5/01/2007 @ $ _____ /day ( _____ days) | (30.87) | |
| 902. Mortgage Insurance premium for _____ mo. to | | |
| 903. Hazard Insurance premium for _____ yrs. to | | |
| 904. Flood Insurance premium for _____ yrs. to | | |
| 905. | | |
| 906. | | |
| 1000. Reserves Deposited With Lender | | |
| 1001. Hazard Insurance _____ months @ $ _____ per month | | |
| 1002. Mortgage Insurance _____ months @ $ _____ per month | | |
| 1003. City property taxes _____ months @ $ _____ per month | | |
| 1004. County property taxes _____ months @ $ _____ per month | | |
| 1005. Annual assessments _____ months @ $ _____ per month | | |
| 1006. Flood Insurance _____ months @ $ _____ per month | | |
| 1007. _____ months @ $ _____ per month | | |
| 1008. Aggregate Adjustment | | |
| 1009. | | |
| 1100. Title Charges | | |
| 1101. Settlement or closing fee to Just Escrow | 895.00 | |
| 1102. Abstract or title search to | | |
| 1103. Title examination to | | |
| 1104. Title insurance binder to | | |
| 1105. Document preparation to | | |
| 1106. Notary fees to Just Escrow | 150.00 | |
| 1107. Attorney's fees to | | |
| (includes above item Numbers ) | | |
| 1108. Title insurance to Their Title | | |
| (includes above item Numbers ) | 2,300.00 | |
| 1109. Lender's coverage $ _____ Premium: $ _____ | | |
| 1110. Owner's coverage $ | | |
| 1111. Wire/Express to To Be Determined | 18.48 | |
| 1112. Messenger Fee to Just Escrow | 150.00 | |
| 1113. | | |
| 1114. | | |
| 1200. Government Recording and Transfer Charges | | |
| 1201. Recording fees: Deed $ _____ Mortgage $ _____ Release $ _____ | | |
| 1202. City/county tax/stamps: Deed $ _____ Mortgage $ _____ | | |
| 1203. State tax/stamps: Deed $ _____ Mortgage $ _____ | | |
| 1204. | | |
| 1205. | | |
| 1300. Additional Settlement Charges | | |
| 1301. Survey to | | |
| 1302. Pest inspection to | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1310. | | |
| 1311. | | |
| 1400. Total Settlement Charges (enter on line 103, Section J, and line 502, Section K) | 6,316.10 | |

FINAL HUD CERTIFIED COPY

Page 2 of 2

*Exhibit 1*

/export/data/radardocs2/nuxeo/srcblobs/mit-184503-200905061414-110/8287772.tif - page 3

| ATTACHMENT TO HUD 1 | | Escrow No.: | 10903-MB |
|---|---|---|---|
| Settlement Date: 5/03/2007 | | Title No.: | 198132 |
| | | Page: | 1 |

**EXHIBIT A: (HUD Section 100)**
Gross Amount Due From Borrower – Loan Payoff Breakdown:          Buyer Amount  Seller Amount

**Aegis**
| Principal Balance To: Aegis | | 780,000.00 |
|---|---|---|
| Interest Per Diem From 4/01/2007 to 5/04/2007 @ $ | 157.0833 To: Aegis | 5,340.77 |
| Statement / Demand Fee To: Aegis | | 40.00 |
| Reconveyance Fee To: Aegis | | 7.00 |
| | Total: | 785,387.77 |

**National City**
| Principal Balance To: National City | | 196,981.38 |
|---|---|---|
| Interest Per Diem From 4/25/2007 to 5/07/2007 @ $ | 46.0000 To: National City | 414.72 |
| | Total: | 197,396.10 |

FINAL HUD
CERTIFIED COPY

CERTIFIED TO BE A TRUE AND EXACT
COPY OF THE ORIGINAL HEREOF.

BY

*(handwritten: Pg 16 of 20+ 2.1)*
*(handwritten: Plaintiff's copy)*

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

**Creditor:**
MORTGAGEIT, INC.

**Borrower:**
MARINA L. WRIGHT

21900 BURBANK BOULEVARD SUITE 260
WOODLAND HILLS, CA 91367-

**Date:** APRIL 25, 2007

3004 ABERDEEN LANE
EL DORADO HILLS, CA 95762
**Loan Number:** 40812574

Check box if applicable.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 8.001 % % | $ 2,664,369.61 | $ 983,371.79 | $ 3,647,741.40 |

[ ] REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit.
PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 12 | 2,619.32 | 06/01/2007 | | | | | | |
| 12 | 2,815.77 | 06/01/2008 | | | | | | |
| 12 | 3,026.95 | 06/01/2009 | | | | | | |
| 444 | 7,986.93 | 06/01/2010 | THE PAYMENT SCHEDULE AND ANNUAL PERCENTAGE RATE DISCLOSED HERE ARE ESTIMATED ASSUMING THAT THE CURRENT INDEX RATE WILL NOT INCREASE NOR DECREASE THROUGHOUT THE LOAN TERM. | | | | | |

[ ] DEMAND FEATURE: This obligation has a demand feature.
[x] VARIABLE RATE: Your loan contains variable rate features.
 [ ] Information regarding the variable rate features of your loan have been provided to you earlier in a separate document.
 [x] Information regarding the variable rate features of your loan are provided hereinafter. The annual percentage rate may increase or decrease during the term of this transaction with increases or decreases in the value of the "index" (or "Reference Rate"). The rate that you will pay may not be changed more often than every ___ ONE___ MONTH commencing ___06/01/2007___ .  *(handwritten: → Correct)*
 [ ] Rate Change Limits: The rate may not be changed by more than _____ % on any one Rate Change Date.
 [x] The rate will never be greater than ___9.500___ %
 [ ] Any increase in the rate will result in a corresponding increase in the payment.
 [x] Rate increases may occur without immediate and/or corresponding payment increases.
 [x] Unpaid interest will be added to the principal.
 The "Index" (or "Reference Rate") is the:
THE TWELVE MONTH AVERAGE OF THE MONTHLY YIELDS ON UNITED STATES TREASURY SECURITIES, ADJUSTED TO A CONSTANT MATURITY OF ONE YEAR, AS MADE AVAILABLE BY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM.

INSURANCE: The following insurance is required to obtain credit:
[ ] Credit life insurance and credit disability          [X] Property insurance          [ ] Flood insurance
You may obtain this insurance from anyone you want that is acceptable to creditor.
[ ] If you purchase [ ] property [ ] flood insurance from creditor you will pay $ _____ for one year term.
SECURITY: You are giving a security interest in:
 3004 ABERDEEN LANE, EL DORADO HILLS, CA 95762
[ ] The goods or property being purchased          [X] Real property you already own.
FILING FEES: $ 150.00.
LATE CHARGE: If a payment is more than 15 days late, you will be charged 6.00 % of the payment.
PREPAYMENT: If you pay off early, you
[X] may   [ ] will not   have to pay a penalty.
[ ] may   [X] will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
[ ] may   [ ] may, subject to conditions   [X] may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
[ ] e means an estimate          [ ] all dates and numerical disclosures except the late payment disclosures are estimates.
The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.
[x] I/We have received the Variable Rate Disclosure for the loan program for which I/We have applied.

*(signature)*                          04/25/07
_____          _____
Apps                                       Date

_____          _____
Date                                       Date

*Exhibit 2.2 (Defendant's copy)*

/export/data/radardocs2/nuxeo/srcblobs/mit-184503-200905061414-110/8287771.tif - page 1

## FEDERAL TRUTH - IN - LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Creditor:                                          Borrower:
HOMEFIELD, INC.                                    MARINA L. ROBERT

21300 DUPARK BOULEVARD SUITE 240                   3004 AMERICAN LANE
WOODLAND HILLS, CA 91367                           EL DORADO HILLS, CA 95762
Date: APRIL 25, 2007                               Loan Number: 42012574
Check box if applicable

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.001 % | $ 2,664,369.61 | $ 983,371.79 | $ 3,647,741.40 |

[ ] REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit.

**PAYMENTS: Your payment schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 12 | 2,629.32 | 06/01/2007 | | | | | | |
| 12 | 2,813.77 | 06/01/2008 | | | | | | |
| 12 | 3,026.65 | 06/01/2009 | | | | | | |
| 144 | 7,995.99 | 06/01/2010 | THE PAYMENT SCHEDULE AND ANNUAL PERCENTAGE RATE DISCLOSED HERE ARE ESTIMATED ASSUMING THAT THE CURRENT INDEX RATE WILL NOT INCREASE NOR DECREASE THROUGHOUT THE LOAN TERM. | | | | | |

[ ] DEMAND FEATURE: This obligation has a demand feature.
[x] VARIABLE RATE: Your loan contains variable rate features.
[ ] Information regarding the variable rate features of your loan have been provided to you earlier in a separate document.
[x] Information regarding the variable rate features of your loan are provided hereinafter. The annual percentage rate may increase or decrease during the term of this transaction with increases or decreases in the value of the "Index" (or "Reference Rate"). The rate that you will pay may not be changed more often than every ___ OR ___ MONTH commencing ___ 06/01/2007 ___.
[ ] Rate Change Limits: The rate may not be changed by more than ___ % on any one Rate Change Date.
[x] The rate will never be greater than ___ 8.950 ___ %
[ ] Any increase in the rate will result in a corresponding increase in the payment.
[x] Rate increases may occur without immediate and/or corresponding payment increases.
[x] Unpaid interest will be added to the principal.
The "Index" (or "Reference Rate") is the:
THE TWELVE MONTH AVERAGE OF THE MONTHLY YIELDS ON UNITED STATES TREASURY SECURITIES, ADJUSTED TO A CONSTANT MATURITY OF ONE YEAR, AS MADE AVAILABLE BY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM.

*→ falcification!*

INSURANCE: The following insurance is required to obtain credit:
[ ] Credit life insurance and credit disability   [X] Property Insurance        [ ] Flood Insurance
You may obtain the insurance from anyone you want that is acceptable to creditor.
[ ] If you purchase [ ] property [ ] flood insurance from creditor you will pay $ ___ for one year term.
SECURITY: You are giving a security interest in:
3004 AMERICAN LANE, EL DORADO HILLS, CA 95762
[ ] The goods or property being purchased   [X] Real property you already own.
FILING FEES: $ 150.00
LATE CHARGE: If a payment is more than 15 days late, you will be charged 6.00 % of the payment.
PREPAYMENT: If you pay off early, you
[X] may   [ ] will not   have to pay a penalty.
[ ] may   [X] will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
[ ] may   [ ] may, subject to conditions   [X] may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
[ ] e means an estimate   [ ] all dates and numerical disclosures except the late payment disclosures are estimates.
The undersigned acknowledge receiving and reading a complete copy of this disclosure.
Neither you nor the creditor presently has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.
[x] I/We have received the Variable Rate Disclosure for the loan program for which I/We have applied.

_(signature)_                    04/25/07
                                 Date                                    Date

                                 Date                                    Date

Page 1                           CREDIT SUPPORT SYSTEMS INC. 847-821-xxxx (phone)

## VERIFICATION

I, Marina L Weahunt, do swear and affirm that all statements made herein are true
and accurate, in all respects, to the best of my knowledge.
Marina L Weahunt
PO Box 1741
Beverly Hills, CA 90213

_____          _____

**Marina L Weahunt**


The Person above, who proved to me on the basis of satisfactory evidence to be the

person whose name is subscribed to this document and acknowledged to me that

he/she executed the same in his authorized capacity and that by his signature on

this instrument who is the person who executed this instrument.

I certify under PENALTY OF PERJURY under the laws of this State that the

foregoing paragraph is true and correct.


Witness my hand and official seal.


_____

**NOTARY PUBLIC IN AND FOR**                    **Notary Seal**
**THE STATE OF CALIFORNIA**

## CERTIFICATE OF SERVICE

I, Marina L Weahunt, do swear and affirm that I have served a signed copy of this Response to defendant's motion to dismiss to any and all defendants by way of U.S.P.S. Certified mail # _____n/a_____ and return receipt, regular mail, and via facsimile # _916-448-1709,_ and noticed by telephone on the _25_ day of _October_, 2010.

Marina L Weahunt
PO Box 1741
Beverly Hills  CA 90213

_____
**Marina L Weahunt**

The Person above, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this document and acknowledged to me that he/she executed the same in his authorized capacity and that by his signature on this instrument who is the person who executed this instrument.

I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____

**NOTARY PUBLIC IN AND FOR**                    **Notary Seal**
**THE STATE OF CALIFORNIA**

*Exhibit 2.2 (Defendant's)*
*copy*

/export/data/radardocs2/nuxeo/srcblobs/mit-184503-200905061414-110/8287771.tif ~ page 1

## FEDERAL TRUTH - IN - LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Creditor:
HOMEFIRST, INC.

Borrower:
WANDA L. ROBERT

21900 BURBANK BOULEVARD SUITE 240
WOODLAND HILLS, CA 91367-

3004 REDWOOD LANE
EL DORADO HILLS, CA 95762
Loan Number: 4081574

Date: APRIL 25, 2007
Check box if applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.001 % | $ 2,664,369.61 | $ 983,371.79 | $ 3,647,741.40 |

[ ] REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit.

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: |
|---|---|---|---|---|---|---|---|---|
| 12 | 2,429.38 | 06/01/2007 | | | | | | |
| 12 | 2,813.77 | 06/01/2008 | | | | | | |
| 12 | 3,026.99 | 06/01/2009 | | | | | | |
| 444 | 7,985.98 | 06/01/2010 | | | | | | |

THE PAYMENT SCHEDULE AND ANNUAL PERCENTAGE RATE DISCLOSED HERE ARE ESTIMATED ASSUMING THAT THE CURRENT INDEX RATE WILL NOT INCREASE NOR DECREASE THROUGHOUT THE LOAN TERM.

[ ] DEMAND FEATURE: This obligation has a demand feature.
[x] VARIABLE RATE: Your loan contains variable rate features.
  [ ] Information regarding the variable rate features of your loan have been provided to you earlier in a separate document.
  [x] Information regarding the variable rate features of your loan are provided hereinafter. The annual percentage rate may increase or decrease during the term of this transaction with increases or decreases in the value of the "Index" (or "Reference Rate"). The rate that you will pay may not be changed more often than every ___ ONE___ MONTH  commencing ___04/01/2009___.
  [ ] Rate Change Limits: The rate may not be changed by more than _____ % on any one Rate Change Date
  [x] The rate will never be greater than ___9.850___ %
  [ ] Any increase in the rate will result in a corresponding increase in the payment.
  [x] Rate increases may occur without immediate and/or corresponding payment increases.
  [x] Unpaid interest will be added to the principal.
  The "Index" (or "Reference Rate") is the:
THE TWELVE MONTH AVERAGE OF THE MONTHLY YIELDS ON UNITED STATES TREASURY SECURITIES, ADJUSTED TO A CONSTANT MATURITY OF ONE YEAR, AS MADE AVAILABLE BY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM.

INSURANCE: The following insurance is required to obtain credit:
[ ] Credit life insurance and credit disability    [X] Property insurance      [ ] Flood Insurance
You may obtain the insurance from anyone you want that is acceptable to creditor.
[ ] If you purchase [ ] property [ ] flood insurance from creditor you will pay $ _____ for one year term.
SECURITY: You are giving a security interest in:
3004 REDWOOD LANE, EL DORADO HILLS, CA  95762
[ ] The goods or property being purchased    [X] Real property you already own.
FILING FEES: $  150.00
LATE CHARGE: If a payment is more than  15  days late, you will be charged  6.00  % of the payment.
PREPAYMENT: If you pay off early, you
[X] may    [ ] will not    have to pay a penalty.
[ ] may    [X] will not    be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
[ ] may    [ ] may, subject to conditions    [X] may not    assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
[ ] means an estimate    [ ] all dates and numerical disclosures except the late payment disclosures are estimates.
The undersigned acknowledges receiving and reading a completed copy of this disclosure.
Neither you nor the creditor presently has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.
[x] I/We have received the Variable Rate Disclosure for the loan program for which I/We have applied.

_____     04/25/07     _____
BORROWER / DATE                  Date                   Date

_____     _____
Date                                     Date

Page 1          LENDER SUPPORT SYSTEMS INC. tdtl-02.wfl (plodi)

→ *falcification!*